UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRETT HOWARD                                              CIVIL ACTION

VERSUS                                                    NO: 09-6265

CAL DIVE INTERNATIONAL, INC.                              SECTION: "A" (2)

**ORDER**

Before the Court is a **Motion to Strike (Rec. Doc. 27)** filed by Plaintiff, Brett Howard ("Plaintiff"). Defendant, Cal Dive International, Inc. ("Defendant"), opposes the motion. The motion, set for hearing on December 8, 2010, is before the Court on the briefs. For the reasons that follow, the **Motion to Strike (Rec. Doc. 27)** is **GRANTED**.

**I. BACKGROUND**

This case concerns a slip and fall incident aboard a vessel. Plaintiff was employed by Sontheimer Offshore Catering ("SONOCO") as a cook aboard the M/V RIDER, a vessel owned and operated by Defendant. (Compl. at ¶ II.) On September 11, 2007, Plaintiff was working as a night cook and carrying a hot pot of gravy when he slipped and fell on a series of mats. (Pl.'s Mem. Supp. Mot. to Strike 1.) Plaintiff sustained injuries to his cervical, thoracic, and lumber spine. (Compl. at ¶ III.) Plaintiff contends that the mats separated because they were worn and defective. (Pl.'s Mem. Supp. Mot. to Strike 1.) Plaintiff filed the instant suit against Defendant, alleging that Defendant was negligent for allowing an unreasonably dangerous condition to exist upon its vessel. (*Id.*)

Defendant retained David Scruton as a maritime liability expert to assess the liability and

1

safety concerns surrounding the accident. (Def.'s Mem. Opp'n to Mot. to Strike 3.) Mr. Scruton seeks to opine as to the duties and responsibilities of a night cook pursuant to customary industry practices and the safety protocols employed aboard a vessel. (*Id.*) Specifically, Mr. Scruton opines that: (1) the rubber mats pictured in the photographs customarily are used aboard vessels to provide good food traction; (2) Plaintiff as the night cook was the supervisor and had a duty to take corrective action; (3) Plaintiff was responsible for cleaning any spilled food or water on the mats; (4) Plaintiff violated SONOCO's company policies by carrying a large, hot pot of gravy; and (5) Plaintiff had the discretionary authority to remove the mats. (Scruton Expert Report 6-7.) Plaintiff filed the instant motion to strike the proffered testimony of Mr. Scruton because expert testimony will not aid the jury in determining liability in this case. (Pl.'s Mem. Supp. Mot. to Strike 1.) Defendant opposes the motion, arguing that Mr. Scruton's testimony will help educate the jury as to the customary industry practices and the workplace safety standards that govern the duties of cooks aboard vessels. (Def.'s Mem. Opp'n to Mot. to Strike 5.)

## II. **DISCUSSION**

### A. Applicable Law

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006). Rule 702 provides in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). In order for evidence to be admissible under *Daubert*, the evidence must be both reliable and relevant. *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147 (1999). The district court serves as a gatekeeper in determining the admissibility of expert testimony. *U.S. v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003). The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Pipitone*, 288 F.3d at 244. The proponent of the expert testimony has the burden of proving that the proffered testimony is admissible. *Fullwood*, 342 F.3d at 412.

In *Daubert*, the Supreme Court articulated a number of nonexclusive factors that may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94; *see also Pipitone*, 288 F.3d at 244. These factors, however, "may or may not be pertinent in assessing reliability depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire,* 526 U.S. at 150.

In addition to reliability, *Daubert* requires that expert testimony be relevant. Expert testimony is relevant under *Daubert* if it assists the trier of fact in understanding the evidence. *Daubert*, 509 U.S. at 591. In *Peters v. Five Star Marine Service*, the Fifth Circuit held that expert

testimony does not assist the trier of fact if the court finds that "the jury adeptly [can] assess [the] situation using only their common experience and knowledge." *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990). In *Peters*, the plaintiff was injured while unloading machinery and goods on an offshore supply vessel. *Id.* at 448-49. The plaintiff argued that the district court erred in excluding his expert from testifying as to the responsibilities of the master and crew in offloading procedures, the obligation to keep the deck clean of fuel, and the need to store cargo properly. *Id.* at 449. The court found that expert testimony would not assist the jury in assessing whether the cargo was improperly stowed, whether it was reasonable for the plaintiff's employer to offload the vessel during heavy seas, and whether diesel fuel made the boat deck slippery given that these opinions derived from common sense. *Id.* at 450. Conversely, in *Smith v. United States Gas Pipeline Co.*, the Fifth Circuit reversed the district court's decision to exclude expert testimony because the reasonableness of using a ship's crane equipped with a "headache ball" and a shackle without a "tag line" while two ships were stern-to-stern was not within the realm of the average juror's knowledge and experience. *Smith v. United States Gas Pipeline Co.*, 857 F.2d 1471 (5th Cir. 1988).

As in *Peters*, several courts in the Eastern District of Louisiana have found that no expertise was required to assist the jury in determining liability for accidents occurring offshore. In *Bouton v. Kim Susan Inc.*, Judge Vance excluded expert testimony as to whether the employer provided a clean, safe workplace and whether the employer violated federal regulations and safety manuals when the plaintiff slipped and fell while unloading piping given that no expertise was required to render these opinions. *Bouton v. Kim Susan Inc.*, No. 96-902, 1997 WL 61450, at *1-2 (E.D. La. Feb. 6, 1997). Likewise, in *Jones v. H.W.C. Ltd.*, Judge Vance precluded the expert testimony of

both parties because it would "intrude upon the domain of common sense matters upon which jurors require no expert assistance." *Jones v. H.W.C. Ltd.*, No. 01-3818, 2003 WL 42146, at *3 (E.D. La. Jan. 3, 2003). In *Jones*, the plaintiff fell off a ladder on a fixed drilling platform. *Id.* at *1. The plaintiff's expert opined that the hydraulic oil that had spilled on the floor created a slippery condition and reduced the traction of the ladder. *Id.* at *3. Conversely, the defendant's expert opined that no hydraulic oil had been spilled. *Id.* Judge Vance concluded that both expert opinions "consist[ed] of conclusions and one sided recitations of disputed facts relating to the presence of oil on the ladder and the ship's cleanup procedures." *Id.* As a result, both expert opinions were excluded. *Id.* Similarly, in *Matherne v. MISR Shipping Co.*, Judge Livaudais prevented the defendant's safety expert from testifying as to the safe means of ingress and egress onto a vessel after the plaintiff fell while attempting to board the vessel. *Matherne v. MISR Shipping Co.*, No. 88-2261, 1991 WL 99426, at *1 (E.D. La. May 31, 1991). The court reasoned that the jury was "competent to determine such liability issues and [that] a safety expert would not assist the jury in reaching a decision on the vessel's liability in a routine fall on a vessel." *Id.* (internal citations omitted).

In addition, several courts have precluded safety experts from testifying about safety procedures on vessels when a jury is capable of understanding the relevant safety policies and regulations. In *Oatis v. Diamond Offshore Management Co.*, Judge Engelhardt excluded the plaintiff's expert from testifying after determining that the jury was capable of understanding the defendant employer's safety policies and whether those policies were violated when the plaintiff fell while offloading pipe. *Oatis v. Diamond Offshore Mgmt Co.*, No. 09-3267, 2010 WL 936449, at *2 (E.D. La. Mar. 12, 2010). Similarly, in *Araujo v. Treasure Chest Casino, L.L.C.*, Judge Clement

held that the testimony of the proffered experts was inadmissible. *Araujo v. Treasure Chest Casino, L.L.C.*, No. 97-3043, 1999 WL 219771, at *2 (E.D. La. Apr. 14, 1999). In *Araujo*, the plaintiff fell off a ladder on the defendant's vessel and sustained injuries. *Id.* at *1. The plaintiff attempted to introduce expert testimony concerning the defendant's failure to provide proper training and safety equipment. *Id.* at 2. Even though the plaintiff's expert relied on safety regulations and the defendant's safety manual, the court found that the expert testimony was not helpful to the jury because it "relate[d] to issues within the common knowledge, experience, and understanding of the average lay juror." *Id.* Likewise, in *Roy v. Florida Marine Transporters Inc.*, the proffered expert opined that the captain violated the defendant's operations manual and standard industry practices when he allowed his crew to work from heights on make-shift platforms. *Roy v. Florida Marine Transporters Inc.*, No. 03-1195, 2004 WL 551208, at *3 (E.D. La. Mar. 18, 2004). Judge Vance held that the expert opinion was inadmissible because such testimony "would intrude upon the domain of common sense matters" reserved for the jury. *Id.; see also Thomas v. Global Explorer, LLC*, No. 02-1060, 2003 WL 943645, at *2 (E.D. La. Mar. 3, 2003) (excluding expert testimony even when the expert cited OSHA regulations).

**B. Analysis**

Primarily, Plaintiff challenges the relevance of Mr. Scruton's testimony, arguing that the jury is capable of understanding the safety policies aboard the vessel and whether they were violated by Plaintiff.[1] The Court agrees with Plaintiff that Mr. Scruton's testimony is irrelevant. The Court finds that the instant case more closely resembles *Peters* and other cases in the Eastern District of

---

[1] Plaintiff also challenges the reliability of Scruton's expert testimony because Plaintiff alleges that Mr. Scruton has no experience in the offshore catering industry. (Pl's Response to Def's Opp'n to Mot. to Strike 2-3.)

Louisiana precluding the use of expert testimony for matters within the common knowledge and experience of jurors.  Like in *Peters*, Mr. Scruton's testimony as to Plaintiff's duties and responsibilities as a supervisor aboard the vessel will not assist the trier of fact because the jury competently can assess whether Plaintiff had a duty to notice and remove the allegedly defective mat while cooking and whether Plaintiff was obligated to clean up spilled food and water on the mats.  Although some tasks by crew members may involve unique working conditions unknown to the average person, the Court finds that the Plaintiff's cooking and cleaning duties are familiar to the average juror.

Similar to *Bouton* and *Matherne*, no expertise is required to assess the safety conditions on a vessel during a routine slip and fall accident.  Expert testimony is not needed to evaluate the safe conditions for cooking and transporting food while walking on an allegedly worn mat given that such testimony does not involve any scientific or technical procedures that are unknown to the jury.  Thus, no expertise of any kind will assist the jury in resolving whether the mat posed an unreasonably dangerous condition and whether the alleged defective condition of the mat should have been evident to Plaintiff.  Moreover, as in *Jones*, some of Mr. Scruton's opinions consist of one-sided conclusions based on disputed facts relating to the condition of the allegedly defective mat involved in the accident.  For example, Mr. Scruton's opinion that similar photographed mats provide good traction is disputed factually by Plaintiff because Plaintiff contends that the mats in the photographs were not of the same quality and size as the mat involved in the accident. Therefore, Mr. Scruton's testimony must be excluded.

Furthermore, Mr. Scruton's reliance on safety regulations and industry standards does not render his opinion more helpful.  Like in *Oatis*, the jury can understand Defendant's safety policy

7

of preventing and removing slip and fall hazards and whether Plaintiff violated those policies. As in *Roy* and *Thomas*, Mr. Scruton's opinion that Plaintiff violated SONOCO's policies and standard industry practices when he carried the large, hot pot of gravy across the mat "intrudes upon the domain of common sense matters" reserved for the jury. The cases cited by Defendant where Mr. Scruton previously offered expert testimony differ considerably from the instant case. In those cases, Mr. Scruton's proffered testimony was more analogous to *Smith* and assisted the jury in understanding mooring procedures, the use of cross-over hoses, and the operation of back up tongs–all of which consist of machinery unfamiliar to the average juror, unlike the dangers posed by an allegedly worn and deteriorating cooking mat.

## IV. CONCLUSION

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion to Strike (Rec. Doc. 27)** filed by Plaintiff, Brett Howard, is **GRANTED**.

This 5th day of January 2011.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE